[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE MOTION FOR SUMMARY JUDGMENT
United Illuminating Co. (U.I.), the named plaintiff's employer and self insured provider of workers' compensation benefits to him, has previously and successfully moved to intervene in this uninsured motorist action arising out of a motor vehicle accident that occurred while the plaintiff was acting within the scope of his employment. The original plaintiffs and the defendant have now joined forces in seeking to have summary judgment enter against the intervening plaintiff.
Summary judgment must be granted if the pleadings, affidavits, and other documentary proof show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Conn. Practice Book § 384; Telesco v. Telesco, 187 Conn. 715, 447 A.2d 752
(1982); Yanow v. Teal Industries, Inc., 178 Conn. 202,422 A.2d 311 (1979). A "material" fact is one which will make a difference in the outcome of the case. United Oil Co. v. Stamford UrbanRedevelopment Commission, 158 Conn. 364, 260 A.2d 596 (1969). In ruling upon a summary judgment motion, the court merely determines whether an issue of fact exists, but does not try the issue if it does exist. Michaud v. Gurney, 168 Conn. 431,362 A.2d 857 (1975).
The purpose of summary judgment is to eliminate the delay and expense accompanying a trial where there is no real issue to be tried. Dowling v. Kielak, 160 Conn. 14, 273 A.2d 716 (1970);Dorazio v. M.B. Foster Electronic Co., 157 Conn. 226, 253 A.2d 22
CT Page 298 (1968). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." Connecticut Bank Trust Co. v. Carriage LaneAssociates, 219 Conn. 772, 780-81, 595 A.2d 334 (1980).
The facts on which the motion is based are not in dispute[1]: William Harkins was operating his motor vehicle in the course of his employment when he was injured due to the alleged negligence of a driver who left the scene and was never discovered, rendering that driver "uninsured" within the meaning of the defendant's policy. U.I. has paid, and may become obligated to continue to pay, substantial workers' compensation benefits on his behalf.
The policy specifically provides, in pertinent part:
"Allstate will not pay any damages an insured person is legally entitled to recover because of. . . bodily injury if the payment would directly or indirectly benefit any workers compensation or disability benefits insurer, including a self-insurer. . ."; and "the limits of this [uninsured motorist coverage will be reduced by:. . . all amounts paid or payable under any workers compensation law, disability benefits law, or similar law. "
U.I. nonetheless claims entitlement to reimbursement by Allstate on the basis of General Statutes § 31-293, which provides, in pertinent part:
 When an injury for which compensation is payable under the provisions of this chapter has been sustained under circumstances creating in a third person other than the employer a legal liability to pay damages for the injury. . . . the injured employee may proceed at law against the third person to recover damages. . . . [A]ny employer having paid, or having become obligated to pay, compensation under the provisions of this chapter may bring an action against the third person to recover damages for the injury. . . . [or] may join as a party plaintiff in the action. . . .
The plaintiffs and defendant both argue that:
1. The contract itself bars any payments that would benefit a workers' compensation insurer, including a self-insurer, either directly or indirectly, so that U.I. is not entitled to the CT Page 299 benefit of any payments made by Allstate, and that the plaintiffs and defendant are therefore entitled to a judgment dismissing U.I.'s complaint as a matter of law.
2. The contract already provides for a reduction in uninsured motorist benefits equal to the amount paid or payable by workers' compensation, so that a payback to U.I., as currently sought by it, would produce an unintended and unconscionable double deduction from the benefits for which the plaintiff contracted with the defendant.
3. This is a first party contract action against the insurer, and Allstate is not a third party within the meaning of General Statutes § 31-293.
U.I. argues, in response, that:
1. It is not a party to the insurance contract between the plaintiff and Allstate, neither of whom can be permitted to bargain away U.I.'s statutory right of reimbursement under General Statutes § 31-293.
2. The plaintiff and defendant's "double deduction" argument is specious. The Supreme Court has approved the uninsured motorist carrier's right to reduce coverage by amounts paid or payable by workers' compensation, Rydingsword v. Liberty MutualInsurance Co., 224 Conn. 8, 11-14 (1992), and the right of the employer to reimbursement is conferred upon it by statute. U.I. resents the implication that public policy favors individuals over corporations and entitles individual plaintiffs to dip into as many deep pockets as it can. To the contrary, it claims, Connecticut has clearly favored a policy that grants inviolable priority to the workers' compensation liens of employers.
3. Allstate clearly is a third party with a "legal liability to pay damages for the injury", standing in the shoes of the tortfeasor, and is thus statutorily obligated to reimburse U.I. despite what its contract with the plaintiff may provide.
Resolution of the third issue provides the key to the decision in this case. The court notes the decision in Ferreirav. Aetna Ins. Co., No 0115801, Judicial District of Waterbury (13 Conn. L. Rptr. 472, 1995 WL 55045, January 31, 1995) (W.J. Sullivan, J.) denying a motion to strike the intervening plaintiff's complaint under circumstances similar to those here, but this court reaches a CT Page 300 different conclusion. The court has also been made aware of the fact that New Jersey has viewed uninsured motorist insurers as "liable third parties" for purposes similar to those here,Midland Ins. Co. v. Colatrella, 510 A.2d 30 (N.J. 1986); and that uninsured motorist benefits are the functional equivalent of "damages" under that state's statutory scheme, Montedero v. Cityof Asbury Park, 416 A.2d 433 (N.J. App. Div. 1980).
Nevertheless, although General Statutes § 31-293
specifically authorizes an employer to bring an action against a third party who has a "legal liability to pay damages for the injury", and although Allstate is certainly a third person, it is not a third person who is legally obligated "to pay damages."
Rather, Allstate has a contractual obligation to pay benefits to its insured in an amount which would be the equivalent of the damages it would have received from an insured tortfeasor, less any reductions to which it is entitled by contract or statute.
It must be noted that, in contrast to General Statutes §31-293, the broader language of the comparable New Jersey law, N.J.S.A. 34:15-40, preserves the employee's right of action, from which the employer's rights are derivative, against "a third person . . . liable to the employee or his dependents for an injury or death". Although the Montedero court ruled that "a recovery under a UM policy is regarded `as damages' by statute, N.J.S.A. 17:28-1-1", it is important to recognize that, first, this is an interpretation of a New Jersey statute, and, second, this case followed earlier New Jersey decisions that invalidated, on grounds of "repugnancy to statute and public policy", statutorily prescribed uninsured motorist policies that diminished uninsured motorist benefits by the amount of workers' compensation payments received. Walkowitz v. Royal Globe Ins.Co., 149 N.J. Super. 442, 374 A.2d 40 (App.Div. 1977); Sweeney v.Hartford Acc. and Indem. Co., 136 N.J. Super. 591, 347,347 A.2d 380 (Law. Div. 1975). In contrast, of course, the Connecticut Supreme Court has expressly approved such a provision.Rydingsword, supra. Thus, whereas the New Jersey courts were seeking to avoid a situation whereby a plaintiff could "double dip", the plaintiff and defendant in this case seek to avoid a situation whereby the employer could obtain the benefit of a "double deduction".
In the Midland Ins. Co. case, the New Jersey Supreme Court observed: CT Page 301
 We recognize that the rule elsewhere is that the employee may keep both the workers compensation benefits and the proceeds of his uninsured motorist insurance. See 2A A. Larson, Workmen's Compensation Law § 71.23a at 14-18 n. 27 (1982). Nothing in the legislative history or terms of the uninsured motorist statute, N.J.S.A. 17-28-1.1, however, evinces a legislative intent that uninsured motorist proceeds should be protected from a compensation lien.
In addition to Connecticut's recognition of the right of an uninsured motorist insurer to contract to reduce benefits by the amount of workers' compensation benefits, support for the conclusion that the legislature did not intend the uninsured motorist carrier to be viewed as a third party liable for "damages" is found in statutory and regulatory language. None of the statutes or regulations dealing with uninsured motorists speaks of the insurer paying "damages". Rather, the language is of "coverage", "recovery", "payment of benefits" and "protection against uninsured motorists". See, e.g., General Statutes §38a-336 and Regs. § 38a-334-6. A review of the Ferreira case, apparently the only Connecticut decision to uphold an employer's right of intervention against an uninsured motorist carrier, suggests that this precise issue was not addressed by the parties or the court.
"The primary rule of statutory construction is that `[i]f the language of the statute is clear, it is assumed that the words themselves express the intent of the legislature; Houston v.Warden, 169 Conn. 247, 251, 363 A.2d 121 (1975); Hurlbut v.Lemelin, 155 Conn. 68, 73, 230 A.2d 36 (1967); and thus there is no need to construe the statute. Bell v. Planning and ZoningCommission, 173 Conn. 223, 226, 377 A.2d 299 (1977); Houston v.Warden, supra 251; Hartford Hospital v. Hartford, 160 Conn. 370,375-76, 279 A.2d 561 (1971).'" State v. Smith, 194 Conn. 213, 221
(1988), quoting Anderson v. Ludgin, 175 Conn. 545, 552,400 A.2d 712 (1978).
"The words of [a] statute `are to be given their commonly approved meaning, unless a contrary intent is clearly expressed.'Holmquist v. Manson, 168 Conn. 389, 393, 362 A.2d 971 (1975);State v. Antrum, 185 Conn. 118, 122, 440 A.2d 839 (1981); General Statutes § 1.1." State v. Kish, 186 Conn. 757, 764,443 A.2d 1274 (1982).
It is an axiom of statutory construction that legislative CT Page 302 intent is to be determined by an analysis of the language actually used in the legislation. Caltabiano v. Planning ZoningCommission, 211 Conn. 662, 666, 560 A.2d 975 (1989). Vaillancourtv. New Britain Machine/Litton, 224 Conn. 382 (1993). "`In construing any statute, we seek to ascertain and give effect to the apparent intent of the legislature.' United Illuminating Co.v. Groppo, 220 Conn. 749, 755, 601 A.2d 1005 (1992). `[W]hen the language of a statute is plain and unambiguous, we need look no further than the words themselves because we assume that the language expresses the legislature's intent.' American UniversalIns. Co. v. DelGreco, 205 Conn. 178, 193, 530 A.2d 171 (1987).
"In applying these principles, we are mindful that the legislature is presumed to have intended a just and rational result." Sanzone v. Board of Police Commissioners, 219 Conn. 179,187, 592 A.2d 912 (1991). In considering the intended operation of a statute, courts must also assume that the legislature, in enacting the statute, had in mind other relevant legislation then in existence. Danbury Rubber Company v. Local 402, 145 Conn. 53,138 A.2d 783 (1958). It seems reasonable to presume as well that the legislature was aware of the relevant state agency regulations.
A statute must be applied as its words direct. New Haven v.United Illuminating Co., 168 Conn. 478, 485, 362 A.2d 785 (1975). Words in a statute must be given their plain and ordinary meaning and be interpreted in their natural and usual sense unless the context indicates that a different meaning was intended. Caldor,Inc. v Heffernan, 183 Conn. 566, 570, 440 A.2d 767 (1981). "Statutes should be construed so as not to reach an absurd or unreasonable result." State v. Campbell, 180 Conn. 557, 563,429 A.2d 960 (1980).
Bearing these principles in mind, this court believes that an insurer providing protection to its own insured against uninsured motorists is contractually obligated to pay those benefits, but is not a third party with a legal liability to pay damages within the meaning of General Statutes § 31-293. This result is in harmony with the purposes of the various statutes and regulations which apply to this case, providing a priority lien to the employer where there is a tortfeasor (or any other party legally obligated to pay damages, such as an owner of a vehicle, estate of a deceased tortfeasor, etc.), that can be sued, and denying such a right when the benefits which are sought result from a contract of insurance paid for by the plaintiff himself and providing him with protection against the consequences of being CT Page 303 injured by an uninsured motorist.
The plaintiffs and defendant are thus correct in their contention that they are entitled to a judgment of dismissal against the intervening plaintiff as a matter of law, and their motions for summary judgment are therefore granted.
Jonathan E. Silbert, Judge.